IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOCELYN ANCHETA, | § |
| Plaintiff, | § § § |
| v. | § Civil Action No. 3:22-CV-0385-N |
| SI-BONE, INC., | § § § |
| Defendant. | § § |

# MEMORANDUM OPINION & ORDER

This Order addresses Defendant SI-BONE, Inc.'s ("SI-BONE") motion for summary judgment [16]. Because SI-BONE has shown entitlement to judgment as a matter of law, the Court grants the motion.

## I. THE EMPLOYMENT DISPUTE

This case arises out of Plaintiff Jocelyn Ancheta's termination from SI-BONE in August 2021. Compl. ¶ 14 [1]. SI-BONE is a technology company that develops surgical tools to treat musculoskeletal disorders. Def.'s Ex. 3, Michelle Cadena Decl. ¶ 3 [20-3]. Ancheta, a Filipina woman, began working for SI-BONE in 2018 as a Territory Manager ("TM"). Def.'s Ex. 5, Pl. Dep., Ex. 1, [20-5]. Her role included securing new business and training surgeons on SI-BONE's surgical joint fusion device. Pl's App. 379 [24-5]. As a TM, Ancheta worked closely with Territory Associate Representatives ("TAR") and reported to a Regional Sales Director ("RSD"). Cadena Decl. ¶ 6, Ex. A.

Throughout Ancheta's three-year employment, SI-BONE received several complaints about her conduct. Three TARs in separate instances complained that Ancheta had engaged in unprofessional behavior. The complaints alleged Ancheta: (1) created a "hostile work environment" by frequently getting angry and yelling at a TAR; (2) bullied a TAR over text messages and phone calls; and (3) "flipped out" and "belittled" a TAR. Cadena Decl. Ex. C; Pl. Dep., Ex. 6; Def.'s Ex. 8, Kalee Ballard (Kurz) Dep. 13:1–12 [20-8]. One of SI-BONE's clients also complained about Ancheta's "significant lack of professionalism," "bizarre and incredibly inappropriate" text messages, and "erratic" and "spiteful/vindictive" behavior. Def.'s Ex. 11, Brian Kiscoe Dep. Ex. 16 [20-11]. This complaint came after Ancheta repeatedly contacted the doctor late at night. *Id.* Finally, a member of the reimbursement department complained that she felt threated by Ancheta after a disagreement. Cadena Decl. ¶ 10. SI-BONE followed up with Ancheta several times about her behavior. *See, e.g.*, Pl. Dep. 40:1–10, Ex. 7; Cadena Decl. ¶ 7, Ex. C; Def.'s Ex. 6, Cadena Dep. 52:19–24, 55:20–23 [20-8]. After the final two complaints, SI-BONE decided to terminate her. Cadena Dep. 17:23–18:10.

In February 2022, Ancheta filed this suit against SI-BONE alleging sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964,[1] retaliation in violation of Title VII, breach of contract, and promissory estoppel/unjust enrichment.[2] Compl. ¶¶ 19–43. Now, SI-BONE has moved for summary judgment on all claims.

---

[1] Codified at 42 U.S.C. § 2000e, *et seq.*
[2] In her response to the motion for summary judgment, Ancheta withdrew her retaliation and promissory estoppel/unjust enrichment claims. Pl.'s Resp. Br. 28, 31 [23]. Accordingly, the Court grants summary judgment to SI-BONE on those claims.

## II. SUMMARY JUDGMENT STANDARD IN EMPLOYMENT DISCRIMINATION CASES

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In employment discrimination cases, plaintiffs can prove their claims with direct or circumstantial evidence. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). In cases such as this one, where the plaintiff has not produced direct evidence, courts in this Circuit apply a modified version of the *McDonnell Douglas* burden-shifting framework. *Burrell*, 482 F.3d at 411–12 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff must establish a prima facie case of discrimination. *Burrell*, 482 F.3d at 411. If the plaintiff can do so, "the defendant then must articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff." *Id*. "If the defendant meets its burden of production," the burden then finally shifts back to the plaintiff to "offer sufficient evidence to create a genuine issue of material

MEMORANDUM OPINION & ORDER – PAGE 3

fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic."[3]  *Id.* at 412.  The "burden of persuasion remains with the employee throughout." *Saketkoo v. Adm'rs of Tulane Ed. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).

### III. THE COURT GRANTS SUMMARY JUDGMENT ON THE SEX AND RACE DISCRIMINATION CLAIMS

To establish a prima facie case of sex or race discrimination under Title VII, a plaintiff must show that she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (internal quotations omitted).  SI-BONE contends that Ancheta cannot prove the fourth element. Def.'s Summ. J. Br. 25 [17].  However, because Ancheta cannot show pretext, the Court assumes without deciding that Ancheta can establish a prima facie case of discrimination.[4]

At the pretext stage, Ancheta must show that the proffered reason for termination, unprofessional behavior, was a pretext for sex or race discrimination.  The issue at this stage is not whether the reason was correct or fair, but whether the decisionmakers honestly

---

[3] For both claims, Ancheta argues only that SI-BONE's reason for termination is pretextual. Pl.'s Resp. Br. 20–28.

[4] The parties do not dispute that SI-BONE has stated a legitimate, nondiscriminatory reason for termination — unprofessional behavior that violated the company's anti-harassment policy. Def.'s Summ. J. Br. 32; Pl.'s Resp. Br. 19.

MEMORANDUM OPINION & ORDER – PAGE 4

believed that it was the real reason for her termination. *Harville v. City of Houston*, 945 F.3d 870, 877 (5th Cir. 2019). Ancheta alleges three bases for pretext: (1) disparate treatment; (2) inflammatory characterization of her behavior; (3) and inconsistent application of company policy. Pl.'s Resp. Br. 20. Even viewing the evidence most favorably to Ancheta, it is not sufficient to establish pretext.

### A. Ancheta Has Not Shown Disparate Treatment

Ancheta names several employees who behaved unprofessionally but did not face termination. However, none of the comparators were similarly situated to Ancheta. TM Rachel Lavender received coaching alongside Ancheta when an employee complained about their behavior. Def.'s Ex. 7, Luke Smith Dep. 22:3–23:18 [20-7]. Ancheta also reported that Lavender had "berated" and "belittled" her during a disagreement. Pl.'s App. 176–78. But two internal incidents of unprofessional behavior do not compare to the five internal and external complaints Ancheta received. Likewise, Ancheta lacks evidence that TM Brittany Cathey and TAR Samantha Boomer had more than one incident of unprofessional conduct. *See* Kiscoe Dep. 72:2–22 (discussing the one complaint about Cathey); Pl. App. 432, Tony Recupero Dep. 52:23–53:7 [26] (noting one conflict involving Boomer).

Further, Ancheta's citation to TM Tom McShane does not support her allegation of disparate treatment. McShane received several complaints of inappropriate conduct and was eventually terminated. Cadena Dep. 32:4–7, 33:15–34:3. Ancheta argues that McShane was terminated only for not performing in his job. Pl.'s Resp. Br. 20–22. But the deposition she cites contradicts this argument. As Ancheta notes, HR Business Partner

MEMORANDUM OPINION & ORDER – PAGE 5

Michelle Cadena stated that McShane "didn't want to do certain aspects of his job." *Id.* at 34:2–3.  However, in the sentence immediately before, Cadena claimed that McShane "was just not courteous in his interactions." *Id.* at 34:1–2.  Indeed, when asked what was the final incident that led to his termination, Cadena stated that it was "[p]rofessionalism and conduct and how he was interacting with team members and his manager." *Id.* at 33:15–18.  The record thus shows that unprofessional behavior was, at the very least, a factor in McShane's termination.  Thus, Ancheta has not shown that SI-BONE treated similarly situated employees more favorably than her.

### B. Neutral Language Is Not Sufficient to Show Pretext

Ancheta claims that SI-BONE characterized her conduct as "harassing," "bullying" or "aggressive," while "downplaying" the conduct of white employees.  Pl.'s Resp. Br. 22.  But Ancheta has not tied this sex and race-neutral language to discrimination, nor does she cite a case in this Circuit that permits a finding of pretext on neutral language.  The cases Ancheta does cite show that something "more" must accompany neutral language to constitute pretext.  *See Curry v. Devereux Foundation*, 541 F. Supp. 3d 555, 561–62 (E.D. Pa. 2021) (finding that "angry Black woman" shows discriminatory animus while acknowledging that "angry" alone does not have a racial connotation); *Na'Im v. Clinton*, 626 F. Supp. 2d 63, 75 (D.D.C. 2009) (finding that Plaintiff failed to show racial animus because she could not tie "loud" to her race rather than her character).  Here, Ancheta lacks evidence that the language connected to her race or sex rather than her actions.[5]  Further,

---

[5] Ancheta also points to RSD Brian Kiscoe's comment that Cathey was a "mean girl" as evidence of sex discrimination.  However, Kiscoe was not a decisionmaker in Ancheta's

MEMORANDUM OPINION & ORDER – PAGE 6

she disregards that the employees who complained of her behavior, not just the decisionmakers, used such language to describe her actions. *See, e.g.*, Cadena Decl. Ex. C; Pl. Dep., Ex. 6; Ballard (Kurz) Dep. 13:1-12. Indeed, Ancheta has not shown that the difference in language came from animus rather than the decisionmakers merely repeating complaints. *See Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (noting that a remark must show animus and come from a primary decisionmaker to constitute pretext).

### C. Ancheta Has Not Shown That SI-BONE Mishandled the Investigation

Ancheta claims that SI-BONE deviated from company policy by not getting her side of events. Pl.'s Resp. Br. 27. Although an insufficient investigation can be an indication of pretext, *see Owens v. Circassia Pharmaceuticals, Inc.*, 33 F.4th 814, 829 (5th Cir. 2022), Ancheta has not produced sufficient evidence of that here. The record shows that SI-BONE discussed every complaint with Ancheta, except for a complaint by TAR Kurz that was supported by text messages. *See* Def.'s App. 4–5, 345, 463–66, 504–05. Believing an allegation with corroborating evidence does not constitute pretext, particularly when the employee had several previous complaints against her.[6] *See Owens*, 33 F.4th at 829 (holding that an employer's failure to interview additional people did not constitute pretext).

---

termination, *see* Cadena Dep. 17:23–18:10, and Ancheta has not asserted that his alleged animus influenced the decisionmakers. *See Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (explaining that a manager's prejudice is relevant only if he had influence or leverage over the actual decisionmakers)

[6] Ancheta also argues that she faced disparate treatment because Kiscoe failed to investigate complaints she made against other employees. Pl.'s Resp. Br. 27. But because Kiscoe was not a decisionmaker in Ancheta's termination, his actions do not bear on the decisionmakers' handling of complaints against Ancheta.

MEMORANDUM OPINION & ORDER – PAGE 7

Even viewing the evidence most favorably to Ancheta, she was not shown that SI-BONE's reason for termination is a pretext for discrimination. The record instead shows a pattern of SI-BONE responding to unprofessional incidents with escalating consequences, regardless of sex or race. Accordingly, the Court grants summary judgment to SI-BONE on Ancheta's sex and racial discrimination claims.

## IV. THE COURT GRANTS SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIM

Ancheta asserts that SI-BONE violated its Sales Commission Plan ("Plan") by not paying her $10,678 in post-employment commission. Compl. ¶ 17. The Plan states that terminated employees "shall be entitled to Sales Commissions for the Commissionable Sales completed on or before the termination date." Pl.'s App. 625. However, it defines Commissionable Sale, in part, as a sale "for which the Company has received a purchase order number or other information related to purchase and sale sufficient to invoice the customer, as determined by the Company in its reasonable discretion." *Id.* at 622. Here, Ancheta concedes that she did not submit purchase orders for the disputed commission prior to her termination. Pl.'s Resp. Br. 30. She instead contends that the purchase orders were "received" by the company because they were likely in her email the same day as her termination. *Id.*

The Court concludes that Ancheta has not raised a fact issue regarding her entitlement to commission under the Plan. First, Ancheta asserts merely that she was "expecting" purchase orders in her email. *Id.* Therefore, even accepting her interpretation of the contract, there is no evidence that SI-BONE or Ancheta actually received the purchase orders to render the sales commissionable. Second, SI-BONE retained discretion

MEMORANDUM OPINION & ORDER – PAGE 8

under the Plan to define a commissionable sale. Pl.'s App. 622. It is reasonable for SI-BONE to require employees to submit purchase orders rather than declaring them received upon arrival to an employee's email. Thus, even if the Court assumed that the purchase orders had arrived and were on SI-BONE's servers, Ancheta would not be entitled to commission under the Plan. Accordingly, the Court grants summary judgment to SI-BONE on Ancheta's breach of contract claim.[7]

## CONCLUSION

Because Ancheta has not raised material issues of fact such that a reasonable jury could rule in her favor, the Court grants SI-BONE's motion for summary judgment on all claims.

Signed May 31, 2023.

_____
David C. Godbey
Chief United States District Judge

---

[7] Ancheta's citation to *Crane v. Rave Rest. Group, Inc.*, 552 F. Supp. 3d 692 (E.D. Tex. 2021) does not absolve her of the requirement to submit a purchase order. In *Crane*, there was a fact issue regarding whether the employer terminated plaintiff to avoid payment under the contract. *Id.* at 702. Here, Ancheta does not contend that SI-BONE terminated her to avoid paying the commission.

MEMORANDUM OPINION & ORDER – PAGE 9